## In re PHILADELPHIA & LEWES TRANSP. CO.

(District Court, E. D. Pennsylvania.    April 8, 1902.)

BANKRUPTCY—CORPORATIONS SUBJECT THERETO—CARRIERS—TRADING OR MER-
CANTILE PURSUITS.

A carrier corporation is not engaged in trading or mercantile pur-
suits, so as to bring it within Bankr. Law 1898, subjecting thereto
corporations "engaged principally in manufacturing, trading, printing,
publishing or mercantile pursuits." [1]

Motion to Dismiss Petition.

Horace L. Cheyney and John F. Lewis, for petitioning creditors.
Ira Jewell Williams, for alleged bankrupt.

J. B. McPHERSON, District Judge.    The petition avers that the
bankrupt is "a corporation engaged in the business of carriage by
water of passengers and goods for hire, between the city of Philadelphia
and Lewes, Delaware."    The bankrupt moves to dismiss, upon the
ground that a corporation of this character is not "engaged principally
in manufacturing, trading, printing, publishing or mercantile pursuits,"
and is therefore not within the provisions of the act.    It is apparent
that the corporation cannot be embraced within the clause just quoted,
unless it is found to be engaged principally in "trading or mercantile
pursuits," and to this point the argument has been addressed.    The
construction of these words that is contended for on behalf of the
petition makes them equivalent to "commerce" or "commercial pur-
suits," and would require the court to hold that every other kind of
corporation engaged in commerce was also included within the act.
The railroad and steamship lines of the country, the insurance com-
panies, the telephone and telegraph companies, the express and trans-
fer companies, and perhaps other corporations having something to
do with the movement of persons or commodities, would all be em-
braced within the words if they should be thus construed.    In my opin-
ion, this result is sufficient to condemn the proposed construction.    I
feel sure that, if congress had intended to subject such well-known
and important classes of corporations as railroad, steamship, express,
telegraph, and other companies engaged in commerce, to the operation
of the bankrupt act, they would have been named directly and spe-
cifically, or else the act would have contained such all-embracing terms
as were used in the act of 1867,—"all moneyed, business or commercial
corporations and stock companies."    But to specify the narrower
classes of manufacturing, printing, and publishing corporations, and
then to add "trading or mercantile corporations," indicates to my
mind that these latter words are to have a restricted meaning, and are
not to be so broadened as to cover the whole field of commerce or
commercial pursuits.    See In re Cameron Town Mut. Fire, Lightning
& Windstorm Ins. Co. (D. C.) 96 Fed. 757; In re New York &

[1] What persons are subject to bankruptcy law, see note on Mattoon Nat.
Bank v. First Nat. Bank, 42 C. C. A. 4.

W. Water Co. (D. C.) 98 Fed. 711; In re Elk Park Min. & Mill. Co. (D. C.) 101 Fed. 422; In re Woodside Coal Co. (D. C.) 105 Fed. 56; In re Keystone Coal Co. (D. C.) 109 Fed. 872.

The question is not, I think, whether some one or more of the dictionary meanings of the words "trading" or "mercantile" may be broad enough to embrace such a business as is done by the bankrupt. In the construction of a statute, the effort must always be to determine in what sense the words were used by the legislature; and, while it is true that the natural and ordinary meaning of language is to be followed, it may often happen, as I think it has happened in the present case, that a word may have several natural and ordinary meanings. In that event, the court is obliged to determine by the help of other considerations which meaning the word was intended to convey. For the reasons given, I do not believe that congress intended the words "trading or mercantile" to carry the meaning that is contended for by the petitioning creditors, and accordingly the petition will be dismissed.