### In re H. R. LEIGHTON & CO.

(District Court, S. D. West Virginia. July 26, 1906.)

BANKRUPTCY—CORPORATION—LIABLE TO ADJUDICATION.

> Where a corporation was organized to carry on a general stock, bond, grain, and brokerage business and was authorized to trade on its own behalf in stocks, bonds, grain, etc., and lease and dispose of real and personal property, it was subject to adjudication as a bankrupt corporation engaged in "trading in mercantile business."
>
> [Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 17.
>
> Persons subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

Brown, Jackson & Knight, for petitioners.
Simms & Enslow, for protesting creditor Olive M. Davies.

DAYTON, District Judge (sitting specially). On January 1, 1906, Edwin E. Wilson, John H. Norton, and Wm. D. Ingalls, creditors in a total value of $2,200 as alleged, by them, filed in this court a petition in involuntary bankruptcy, against H. R. Leighton & Co., a corporation under the laws of West Virginia. The usual subpœna to alleged bankrupt issued and was served, returnable January 13, 1906. On January 3, 1906, the original petitioners filed their supplemental petition, supported by an affidavit of one of their number, setting forth the insolvency of said corporation, an assignment by it of its assets to a trustee who had executed no bond, the ownership of property by it in several different states not reduced to possession by said trustee, and asking for the appointment of a receiver pending the selection of a trustee. By order entered the same day, Angus W.

McDonald was appointed by this court such receiver, and on January 10, 1906, he, as such, filed his petition, setting forth that he had taken possession of the property and assets of the corporation in so far as he was able to find the same; that he found at the office in Boston, Mass., numerous stocks and bonds on deposit, some claimed by customers as having been deposited as collateral, others as having been bought and paid for; that such bonds and securities were liable to great fluctuation in values; that furniture and fixtures belonging to said alleged bankrupt corporation were located in different towns and cities in Maine, New Hampshire, Vermont, Rhode Island, and Massachusetts, which should be sold at once in order to save rent, and said petitioner asks that he be authorized to sell any or all of such assets in his possession or that may come into his possession, at either public or private sale. The said corporation, by its treasurer, H. R. Leighton, filed a consent in writing to such sale and an order was, on the same day, entered by this court authorizing such sale of assets liable to deteriorate in value, and of such office furniture and fixtures, by the receiver. On January 13, 1906, the return day of the subpœna for hearing, counsel entered appearance for Olive M. Davies, a creditor, "for the purpose of resisting the bankruptcy of said corporation." On January 15, 1906, the defendant corporation, by its said treasurer, filed its written consent to be adjudged bankrupt. On January 18, 1906, at 10 o'clock, a. m., petitioners filed an amended petition which will be hereafter more particularly referred to, and at 7 o'clock, p. m., of the same day, Olive M. Davies filed a written demurrer and her petition in the cause, which will be referred to hereafter. On February 2, 1906, said McDonald, receiver, filed a second petition, in which he set forth in effect that said H. R. Leighton & Co., corporation, under a contract, had a claim against one Joseph E. Doncitte of about $15,000 for which necessity required suit at once to be brought, and he had employed counsel and instituted such suit. He prays his action may be approved and confirmed, which by order entered by this court on the same day was done. On April 7, 1906, this court (McDowell, Judge, sitting specially) entered an order sustaining the demurrer of Olive M. Davies to petitioners' original and amended petitions, but with leave to them to file amendment thereto before April 25, 1906. Such amendment was filed on that day and on May 24, 1906, the said Olive M. Davies filed her demurrer, motion to dismiss, and answer thereto. On June 22, 1906, Jos. L. Hall and 10 other creditors, representing an aggregate indebtedness of $3,008.93 of said corporation, filed their petition praying to be allowed to intervene and praying said H. R. Leighton & Co., corporation, be immediately adjudged bankrupt. On the same day the original petitioners filed a general replication to the answer of Olive M. Davies to their amended and supplemental petition.

The sole question presented by the record to be passed upon at this time is the contention set forth in the demurrer of Olive M. Davies that the alleged bankrupt corporation is not such a one as can be adjudicated such under the terms of the bankruptcy act. The charter of the company set forth that it was incorporated for the "purpose

of carrying on a general stock, bond, grain and brokerage business, and promoting financial enterprises; to own, manage, lease and dispose of any real or personal property essential or convenient for such business, and generally to do all things necessary or incident thereto." In the original petition it is charged said corporation had been "engaged principally in trading and mercantile pursuits, to wit, in buying and selling bonds and other securities." In the amended and supplemental petition filed January 18, 1906, the allegation is that it "was engaged principally in trading and mercantile pursuits, to wit, in buying and selling stocks, bonds and other securities," and in addition "in buying and selling grain and promoting financial enterprises, and buying and selling real and personal property essential and convenient for such business." In the amended petition filed April 25, 1906, after Judge McDowell had sustained demurrer to the first two, and which amendment was filed in accordance with the permission contained in his order, the allegation is that the corporation "was engaged principally in trading and mercantile pursuits, in buying and selling stocks, bonds and securities," and in addition "in buying and selling grain and cotton and promoting financial enterprises, and buying and selling real and personal property essential and convenient for such business." The contesting creditor, Olive M. Davies, contends in her answer, to which replication has been filed, that the corporation was simply a "bucket shop" concern, and not within the meaning of the words of the statute "engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits."

For the purpose of determining this demurrer, we are to look at the allegations of this last amended petition alone, and counsel are right in asserting that upon its face it must show the jurisdiction of this court. Two preliminary observations may well be made at the threshold of this consideration: First, the corporation is consenting to, and some 14 creditors with debts aggregating over $5,200 are asking, this adjudication as against a single creditor whose debt is alleged to be but $270; and, second, in the language of Mr. Collier (Law & Pr. in Bankruptcy [5th Ed.] page 64):

"Each case will necessarily turn on its own facts. It is not to be doubted, however, that, in this particular, the law is to be interpreted liberally to effectuate its purpose, i. e., that all business corporations, as distinguished from public, quasi public, money-saving or lending corporations, shall be amenable to bankruptcy."

In re Surety Guaranty & Trust Co., 121 Fed. 73, 56 C. C. A. 654, cited by the contesting creditor, the Circuit Court holds a state corporation could not be adjudged a bankrupt as a "private banker," for the very obvious reason that a public corporation could not be a "private" banker, and because the business of banking came within the limits of "money saving and lending," as set forth by Mr. Collier. In re Pacific Coast Warehouse Co. (D. C.) 123 Fed. 749 (a warehouse company); In re Cameron (D. C.) 96 Fed. 756 (a fire insurance company); In re New York Building-Loan Banking Co. (D. C.) 127 Fed. 471 (a building and loan association); In re Snyder & Johnson Co. (D. C.) 133 Fed. 806 (a corporation soliciting adver-

tisements); In re United States Hotel Co., 134 Fed. 225, 67 C. C. A. 153, 68 L. R. A. 588 (a hotel company)—are respectively held to be corporations not amenable to the bankruptcy act. In each of these cases the companies may be called quasi public. Under the ruling in Re Surety Guaranty & Trust Co., supra, it is stated that a corporation organized to buy and "sell stock, bonds, and securities" is not amenable. Taken in consideration with the facts of that case, I think it clear the court meant to say the buying and selling of such for the public upon commission or as brokers. It certainly could not mean to include a corporation selling grain, merchandise, or other such thing and also buying stocks or bonds for the temporary investment of its surplus funds and when needing such funds selling them again. To go a step farther, if a number of persons subscribe to a fund and form a corporation and with the funds buy to-day a note, bond, or security, which to-morrow they sell at a profit and invest the proceeds in a cargo of wheat which in turn is sold and invested in a shipload of cotton to be in turn sold and the proceeds invested in bonds again, all on the sole profit account of this corporation, is it not engaged in the "trading" and "mercantile" operations contemplated by the statute? It seems to me that it is not wise to split hairs or dwell upon fine spun distinctions. This corporation was incorporated according to its charter "for the purpose of carrying on a general stock, bond, grain and brokerage business." If this charter had solely constituted a brokerage business, its relation to the public might well have reserved it from the operations of the act, but it does not limit its business to this. It allows it to trade on its own behalf in stocks, bonds, grain, to own, lease, and dispose of any real or personal property; and this amended petition, fairly construed, in my judgment charges that this was the kind of trading and mercantile business this corporation was engaged in.

Therefore the demurrer will be overruled.