## In re WILLIS CAB & AUTOMOBILE CO.

(District Court, S. D. New York. March 9, 1910.)

BANKRUPTCY (§ 72*)—CORPORATIONS SUBJECT TO ADJUDICATION—MERCANTILE AND TRADING PURSUITS—"MERCANTILE AND TRADING CORPORATION."

A corporation, the principal business of which is the keeping of a boarding stable to feed and care for horses for hire, is not subject to adjudication as a corporation engaged principally in mercantile and trading pursuits; such term embracing corporations whose principal business is the buying and selling of goods in the ordinary course of trade.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 8, pp. 7053, 7054.

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank of Mattoon, Ill., v. First Nat. Bank of Mattoon, Ill., 42 C. C. A. 4.]

Petition in bankruptcy against the Willis Cab & Automobile Company. Petition dismissed.

Black, Varian & Somers, for petitioning creditors.

Hy. A. Rubino and House, Grossman & Vorhaus, for alleged bankrupt.

HOUGH, District Judge. The principal business of bankrupt corporation is to keep a boarding stable. It is admitted that the decision of Blatchford, J., in Re Odell, Fed. Cas. No. 10,426, is a declaration that the purchase of food wherewith to feed boarded horses, the care of such horses, and the collection of money from their owners for such care and feeding constitute the proprietor of such business a merchant or tradesman within the meaning of the bankruptcy act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517). This decision was followed by Brown, J., in Morton Boarding Stables, 108 Fed. 791. My own views about this matter would be immaterial, and it would make no difference what courts in other circuits have decided, and my duty would be to follow these cases, if I were not compelled to believe them inconsistent with several recent decisions in the Circuit Court of Appeals for the Second Circuit, which, however, have not mentioned the opinions of Blatchford and Brown, JJ.

Under the act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), to put this corporation in bankruptcy it must be engaged principally in manufacturing, trading, or mercantile pursuits. That these words should be strictly construed was held in

New York & New Jersey Ice Lines, 147 Fed. 214, 77 C. C. A. 440. In that case it was found that the business of the alleged bankrupt was gathering, storing, preserving, transporting, and selling natural ice. Everything prior to sale was preparatory to sale at a profit, if possible. The business of the company was selling; yet selling did not make it a trader. It would seem that strict construction could go no further.

In Re Wentworth Lunch Co., 159 Fed. 413, 86 C. C. A. 393, it was carefully pointed out that the preparation of food by cooking was not manufacturing, and that the sale of the food so prepared by an incorporated restaurant keeper in small quantities to the ultimate customer was not a mercantile or trading occupation. Preparing pies by the thousand and biscuits by the ton might perhaps savor of manufacturing; but it is obvious that the vending thereof to the consumer on the premises is something not to be performed by one engaged in mercantile or trading pursuits.

Just where the line is to be drawn between wholesale and retail does not appear, but it is plainly impossible to draw any practical distinction between feeding men and feeding horses; nor is the case bettered by the fact that the horses are lodged as well as fed, for that a hotel company is not within the act is now well established. U. S. Hotel Co., 134 Fed. 226, 67 C. C. A. 153, 68 L. R. A. 588, cited with approval in this circuit, in Altonwood Park Co. of New York v. Gwynne, 160 Fed. 448, 87 C. C. A. 409.

The meaning of the words "mercantile and trading pursuits," in the Second circuit, has been further expounded in Re Kingston Realty Co., 160 Fed. 445, 87 C. C. A. 406, from which it appears that, though buying to sell again is of the essence of trade, yet if that which is bought and sold be land there is no trading, and if there be no trading there is no mercantile pursuit, as that term is used in the statute. These decisions were approved in Re N. Y. Tunnel Co., 166 Fed. 284, 92 C. C. A. 202.

In this circuit it would seem that while ships, or at least boats, can be manufactured (Marine Const. & Dry Dock Co., 130 Fed. 446, 64 C. C. A. 648), houses cannot; they are constructed. It is also held that to be engaged in trading pursuits one must both buy and sell either goods or merchandise or other goods ordinarily the subject of traffic. While one following a mercantile pursuit may not only do what a trader does, but "may deal in the sale of and purchase of commodities." When this rule is applied to the sale of foodstuffs it would seem obvious that an incorporated grocery store is a trader, for it buys goods and merchandise to sell again. So does an incorporated restaurant; yet that is not a trader. The distinction is settled by authority; the difference would appear to depend on whether the customer takes away the purchased foodstuffs by external or internal modes of carriage.

By applying these decisions of the Circuit Court of Appeals to the matter in hand, and not perceiving, as above noted, that there is any difference between lodging and feeding horses and lodging and feeding men, this alleged bankrupt cannot be said to follow either a mercantile or trading pursuit. It is therefore not subject to the operation of this act.

The petition is dismissed; but, inasmuch as the finding of the referee was based upon two decisions of this court not mentioned by the higher court in the cases enumerated, the dismissal will be without costs.